IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUNNY V. NGUYEN,<br><br>    Petitioner,<br><br>  v.<br><br>ROBERT A. HOREL, Warden,<br><br>    Respondent. | No. C 08-3457 SBA (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

## INTRODUCTION

This matter is now before the Court for consideration of Petitioner's pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his 2006 conviction in Santa Clara County Superior Court. Respondent Robert A. Horel, Warden of Pelican Bay State Prison, opposes the petition. Petitioner has filed a traverse. For the reasons discussed below, the petition is DENIED as to all claims.

## BACKGROUND

**I.**    **Case History**

On September 26, 2006, a jury in Santa Clara County Superior Court convicted Petitioner of one count of first-degree murder and two counts of second-degree murder (Cal. Pen. Code § 187). The jury also found true the special circumstance of multiple murder (Cal. Pen. Code § 190.2(a)(3)), and sentence enhancements for the use of firearms (Cal. Pen. Code § 12022.5(a)(1), 1203.06(a)(1)(A)). (Resp't Ex. A at 357-69.) On October 27, 2006, the trial court sentenced Petitioner to a term of life without parole in state prison for the first-degree murder, plus a term of thirty years to life in state prison for the two second-degree murders, plus a term of thirty years in state prison for the firearm enhancements. (Resp't Ex. A-1 at 487-88, 531-32.)

The California Court of Appeal affirmed the judgment in an unpublished opinion dated March 28, 2008, and the California Supreme Court denied a petition for review on June 11, 2008.

(Resp't Exs. B-3, C-2.)

The instant petition was filed on July 17, 2008, setting forth two claims of instructional error. On October 22, 2008, Respondent was ordered to show cause. Respondent filed an answer and memorandum of points and authorities on March 19, 2009, and lodged a number of exhibits. Petitioner filed a traverse on May 20, 2009.

## II.   Statement of Facts

The following facts are taken from the opinion of the California Court of Appeal:

> While defendant socialized in a nightclub with members of the "Asian Boys" gang, someone shot one of the gang members and ran away. Defendant and others then gathered at a home, upset and wanting to know who shot their friend. One of those gathered answered the telephone and learned that the shooter was at the May Tiem Café. The group talked about getting the shooter. Some took out guns. Khan Hinh then drove defendant, Senh Duong, and Khoa Nguyen to the café. Defendant possessed a 9-millimeter semi-automatic Glock,[1] Duong possessed a handgun, and Nguyen possessed a shotgun. Another driver from the home transported three others with handguns to the café. Since no one could identify the shooter, the plan was to shoot at random. When the cars arrived at the café, six gunmen entered. One had a shotgun and five had handguns. Defendant and the other gunmen went to a game room in the café and started firing at three unarmed victims who were playing videogames. Defendant fired seven shots. One entered a victim's back. When the firing stopped, the six fled. The victims died from massive injuries.
>
> Defendant told his girlfriend that he had fired one or two shots into a wall. He told another that he had just turned his head, pointed the gun, and shot. He described to another that he became sick at seeing one of the victim's neck being almost blown off and turned his head away, firing his own gun without looking.

People v. Nguyen, No. H030918, slip op. at 1-2 (Cal. Ct. App. Mar. 28, 2008) (footnote in original) (Resp't Ex. B-3).

## DISCUSSION

## I.   Legal Standard

### A.   Standard of Review for State Court Decisions

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a district court may grant a petition challenging a state conviction or sentence on the basis of a claim that was "adjudicated on the merits" in state court only if the state court's adjudication of the claim:

---

[1] An automatic weapon fires bullets so long as the trigger is depressed. A semi-automatic weapon ejects a fired cartridge and reloads a new cartridge automatically but requires the shooter to pull the trigger for each shot fired.

2

"(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  A state court has "adjudicated" a petitioner's constitutional claim "on the merits" for purposes of § 2254(d) when it has decided the petitioner's right to post-conviction relief on the basis of the substance of the constitutional claim advanced, rather than denying the claim on the basis of a procedural or other rule precluding state court review on the merits.  Lambert v. Blodgett, 393 F.3d 943, 969 (9th Cir. 2004).  It is error for a federal court to review de novo a claim that was adjudicated on the merits in state court.  See Price v. Vincent, 538 U.S. 634, 638-43 (2003).

### 1. Section 2254(d)(1)

Challenges to purely legal questions resolved by a state court are reviewed under § 2254(d)(1), under which a state prisoner may obtain habeas relief with respect to a claim adjudicated on the merits in state court only if the state court adjudication resulted in a decision that was "contrary to" or "involved an unreasonable application of  clearly established Federal law, as determined by the Supreme Court of the United States."  Williams (Terry) v. Taylor, 529 U.S. 362, 402-04, 409 (2000).  While the "contrary to" and "unreasonable application" clauses have independent meaning, see id. at 404-05, they often overlap, which may necessitate examining a petitioner's allegations against both standards, see Van Tran v. Lindsey, 212 F.3d 1143, 1149-50 (9th Cir. 2000), overruled on other grounds, Lockyer v. Andrade, 538 U.S. 63, 70-73 (2003).

#### a. Clearly Established Federal Law

"Clearly established federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."  Williams, 529 U.S. at 412.  "Section 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence."  Id.  "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme] Court is, at best, ambiguous."  Mitchell v. Esparza, 540 U.S. 12, 17 (2003).  If there is no Supreme Court precedent that controls on the legal issue raised by a petitioner in state court, the

3

state court's decision cannot be contrary to, or an unreasonable application of, clearly-established federal law. See, e.g., Stevenson v. Lewis, 384 F.3d 1069, 1071 (9th Cir. 2004).

The fact that Supreme Court law sets forth a fact-intensive inquiry to determine whether constitutional rights were violated "obviates neither the clarity of the rule nor the extent to which the rule must be seen as 'established'" by the Supreme Court. Williams, 529 U.S. at 391. There are, however, areas in which the Supreme Court has not established a clear or consistent path for courts to follow in determining whether a particular event violates a constitutional right; in such an area, it may be that only the general principle can be regarded as "clearly established." Andrade, 538 U.S. at 64-65. When only the general principle is clearly established, it is the only law amenable to the "contrary to" or "unreasonable application of" framework. See id. at 73.

Circuit decisions may still be relevant as persuasive authority to determine whether a particular state court holding is an "unreasonable application" of Supreme Court precedent or to assess what law is "clearly established." Clark v. Murphy, 331 F.3d 1062, 1070-71 (9th Cir.), cert. denied, 540 U.S. 968 (2003); Duhaime v. Ducharme, 200 F.3d 597, 600 (9th Cir. 1999).

**b.     "Contrary to"**

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. A "run-of-the-mill state-court decision" that correctly identifies the controlling Supreme Court framework and applies it to the facts of a prisoner's case "would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." Williams, 529 U.S. at 406. Such a case should be analyzed under the "unreasonable application" prong of § 2254(d). See Weighall v. Middle, 215 F.3d 1058, 1062 (9th Cir. 2000).

**c.     "Unreasonable Application"**

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 412-13. "[A] federal habeas court may not issue the writ simply because that court concludes in its

4

independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411; accord Middleton v. McNeil, 541 U.S. 433, 436 (2004) (per curiam) (challenge to state court's application of governing federal law must be not only erroneous, but objectively unreasonable); Woodford v. Visciotti, 537 U.S. 19, 25 (2002) (per curiam) ("unreasonable" application of law is not equivalent to "incorrect" application of law).

Evaluating whether a rule application was unreasonable requires considering the relevant rule's specificity; if a legal rule is specific, the range of reasonable judgment may be narrow; if it is more general, the state courts have more leeway. Yarborough v. Alvarado, 541 U.S. 652, 664 (2004). Whether the state court's decision was unreasonable must be assessed in light of the record that court had before it. Holland v. Jackson, 542 U.S. 649, 651 (2004) (per curiam).

The objectively unreasonable standard is not a clear error standard. Andrade, 538 U.S. at 75-76 (rejecting Van Tran's use of "clear error" standard); Clark, 331 F.3d at 1067-69 (acknowledging the overruling of Van Tran on this point). After Andrade,

> [t]he writ may not issue simply because, in our determination, a state court's application of federal law was erroneous, clearly or otherwise. While the "objectively unreasonable" standard is not self-explanatory, at a minimum it denotes a greater degree of deference to the state courts than [the Ninth Circuit] ha[s] previously afforded them.

Id. In examining whether the state court decision was unreasonable, the inquiry may require analysis of the state court's method as well as its result. Nunes v. Mueller, 350 F.3d 1045, 1054 (9th Cir. 2003).

### 2. Sections 2254(d)(2), 2254(e)(1)

A federal habeas court may grant a writ if it concludes a state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). An unreasonable determination of the facts occurs where a state court fails to consider and weigh highly probative, relevant evidence, central to a petitioner's claim, that was properly presented and made part of the state court record. Taylor v. Maddox, 366 F.3d 992, 1005 (9th Cir. 2004). A district court must presume correct any determination of a factual issue made by a state court unless a petitioner rebuts

5

the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Section 2254(d)(2) applies to an intrinsic review of a state court's fact-finding process, or situations in which the petitioner challenges a state court's fact-findings based entirely on the state court record, whereas § 2254(e)(1) applies to challenges based on extrinsic evidence, or evidence presented for the first time in federal court. See Taylor v. Maddox, 366 F.3d 992, 999-1000 (9th Cir. 2004). In Taylor, the Ninth Circuit established a two-part analysis under §§ 2254(d)(2) and 2254(e)(1). Id. First, federal courts must undertake an "intrinsic review" of a state court's fact-finding process under the "unreasonable determination" clause of § 2254(d)(2). Id. at 1000. The intrinsic review requires federal courts to examine the state court's fact-finding process, not its findings. Id. Once a state court's fact-finding process survives this intrinsic review, the second part of the analysis begins by dressing the state court finding in a presumption of correctness under § 2254(e)(1). Id. According to the AEDPA, this presumption means that the state court's fact-finding may be overturned based on new evidence presented by a petitioner for the first time in federal court only if such new evidence amounts to clear and convincing proof a state court finding is in error. See 28 U.S.C. § 2254(e)(1). "Significantly, the presumption of correctness and the clear-and-convincing standard of proof only come into play once the state court's fact-findings survive any intrinsic challenge; they do not apply to a challenge that is governed by the deference implicit in the 'unreasonable determination' standard of section 2254(d)(2)." Taylor, 366 F.2d at 1000.

When there is no reasoned opinion from the highest state court to consider the Petitioner's claims, the Court looks to the last reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991). Here, the California Court of Appeal was the highest state court to issue an explained opinion on Petitioner's claims.

## II. Exhaustion

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through state collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in

federal court.  See 28 U.S.C. § 2254(b),(c); Granberry v. Greer, 481 U.S. 129, 133-34 (1987).  It is undisputed that Petitioner exhausted his state court remedies as to the first claim raised in his petition on direct appeal in the state courts.  Respondent contends that the second claim is not exhausted, an argument that need not be reached because the claim can be denied on its merits for the reasons discussed below.  See 28 U.S.C. § 2254(b)(2) (allowing district court to deny unexhausted claim on its merits).

## III.   Legal Claims

Petitioner raises two claims in his petition: (1) that the trial court violated his constitutional rights by denying his request to instruct the jury that involuntary manslaughter can be based on a death occurring during the commission of a felony assault with a deadly weapon; and (2) that the trial court violated his constitutional rights because the instruction given pursuant to CALJIC No. 8.45 misled the jury into believing that it could only find involuntary manslaughter if it also found that Petitioner acted in unreasonable self-defense, a theory not in issue.

### 1.   Background Regarding Jury Instructions

The California Court of Appeal summarized the relevant background regarding the involuntary manslaughter instructions as follows:

> Defendant asked the trial court to instruct the jury as to involuntary manslaughter by (1) adapting the standard instruction (CALJIC No. 8.45) to inform that involuntary manslaughter could be found if a killing resulted from a felony assault with a deadly weapon, and (2) giving the standard instructions on assault with a deadly weapon (CALJIC Nos. 9.00, 9.02). He argued that the evidence supported that he was not trying to shoot anyone but instead "turned his head and pointed towards the wall and pulled the trigger of his gun a number of times." The trial court disagreed that an involuntary manslaughter instruction on this theory was justified. It reasoned that defendant admitted intentionally shooting a gun, which was a felony rather than a misdemeanor or gross negligence. Defendant countered that "If you're firing at a wall intending to hit a wall, I'm not sure that that would give rise to an assault." The People agreed with the trial court but "in an abundance of caution" agreed to an involuntary-manslaughter instruction where the predicate offense was misdemeanor brandishing a weapon. They reasoned that a basic rule for involuntary manslaughter is that it can arise from a misdemeanor rather than a felony. The trial court then agreed to instruct on the involuntary manslaughter theory of a killing resulting from misdemeanor brandishing a weapon.
>
> The trial court gave the jury numerous standard instructions on murder. Then, over defendant's objection grounded on his refused request, it instructed the jury in the language of CALJIC No. 8.45 as follows.
>
> "Every person who unlawfully kills a human being, without malice aforethought, and without an intent to kill, and without conscious disregard for human life, is guilty of

7

the crime of involuntary manslaughter in violation of Penal Code section 192 [subdivision] (b). [¶] There is no malice aforethought if the killing occurred in the actual but unreasonable belief and necessity to defend oneself or another person against imminent peril to life or great bodily injury. [¶] A killing in conscious disregard for human life occurs when a killing results from an intentional act, the natural consequences which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for human life. [¶] A killing is unlawful within the meaning of this instruction [ ] if it occurred: [¶] One, during the commission of an unlawful act which is dangerous to human life under the circumstances of its commission; or, [¶] Two, in the commission of an act, ordinarily lawful, which involves a high degree of risk of death or great bodily injury, without due caution and circumspection .[¶] A violation of Penal Code section 417, exhibiting a firearm, is an unlawful act. The commission of an unlawful act, without due caution and circumspection, would necessarily be an act that was dangerous to human life in its commission. [¶] In order to prove this crime, each of the following elements must be proved: [¶] One, a human being was killed; and [¶] Two, the killing was unlawful."

The trial court thereafter instructed on misdemeanor brandishing a weapon as follows. "Every person who, in the presence of another person, draws or exhibits any firearm, whether loaded or unloaded in a rude, angry or threatening manner, or who in any manner unlawfully uses the same in any fight or quarrel, is guilty of a violation of Penal Code section 417 [subdivision] (a)(2), a misdemeanor. [¶] In order to prove this crime, each of the following elements must be proved: [¶] One, a person, in the presence of another person, drew or exhibited a firearm, whether loaded or unloaded, and, [¶] Two, that person did so in a rude, angry or threatening manner; and, [¶] Three, the person was not acting in lawful self-defense."

(Resp't Ex. B-3 at 2-4.)

### 2. **Legal Standard**

To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. Estelle v. McGuire, 502 U.S. 62, 71-72 (1991).  The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. Id. at 72.  The court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process. United States v. Frady, 456 U.S. 152, 169 (1982).  A habeas petitioner is not entitled to relief unless the instructional error caused "actual prejudice," meaning it had a "'substantial and injurious effect or influence in determining the jury's verdict.'" Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).

### 3. **Refusal to Instruct on Assault with a Deadly Weapon Theory**

Petitioner claims that the trial court violated his constitutional rights to due process

8

and to present a defense by denying his request to instruct the jury on his proffered theory of involuntary manslaughter – a killing that occurred in the commission of assault with a deadly weapon. For this theory, Petitioner relies on witnesses who testified that he said that he shot into a wall without looking.

The failure of a state trial court to instruct on lesser-included offenses in a non-capital case does not present a federal constitutional claim. See Solis v. Garcia, 219 F.3d 922, 929 (9th Cir. 2000). Under California law, involuntary manslaughter is a lesser-included offense of murder. People v. Prettyman, 14 Cal.4th 248, 274 (1996). Consequently, Petitioner's claim that the trial court failed to issue his requested instruction of involuntary manslaughter, a lesser-included offense of the murder charges he faced, does not present a federal constitutional claim.

Under limited circumstances "the defendant's right to adequate jury instructions on his or her theory of the case might, in some cases, constitute an exception to the general rule." Solis, 219 F.3d at 929 (citing Bashor v. Risley, 730 F.2d at 1240). To avail himself of this exception to the general rule in Solis, Petitioner would have to establish that there was substantial evidence to warrant the instruction on the lesser included offense. Id. at 929-30 (no duty to instruct on involuntary manslaughter because evidence presented at trial implied malice). Even if there were substantial evidence to support Petitioner's theory that he killed in the course of committing only an assault with a deadly weapon, the failure to give such an instruction in this case was not prejudicial. As correctly explained by the California Court of Appeal, the jury verdict finding Petitioner guilty of murder necessarily means that they found that he acted with malice because malice is an essential element of murder under California law. (Resp't Ex. B-3 at 5.) Under California law, if a defendant acts with malice he is guilty of murder, not manslaughter. (See id. (citing People v. Earp, 20 Cal.4th 826, 886 (1999)). As the jury found that Petitioner acted with malice, they were prohibited from convicting him of involuntary manslaughter. Thus, even if the court had given the involuntary manslaughter instruction that Petitioner requested, the jury would have convicted him of murder in light of their finding that he acted with malice. Consequently, the failure to give the requested

instruction did not have a "substantial and injurious effect on the verdict" so as to cause Petitioner "actual prejudice," Brecht, 507 U.S. at 637, and Petitioner is not entitled to habeas relief on this claim.

The state courts' decisions denying Petitioner's claim were not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor were they based on an unreasonable determination of the facts in light of the evidence presented. See 28 U.S.C. § 2254(d)(1),(2).

### 4.     **CALJIC No. 8.45**

Petitioner claims that the instruction issued pursuant to CALJIC No. 8.45 violated his right to due process because it erroneously led the jury to believe that it could only find involuntary manslaughter if it found that Petitioner acted in unreasonable self-defense.

In determining whether an instruction is erroneous, the inquiry is not how reasonable jurors could or would have understood the instruction as a whole; rather, the court must inquire whether there is a "reasonable likelihood" that the jury has applied the challenged instruction in a way that violates the Constitution. See Estelle v. McGuire, 502 U.S. at 72 & n.4.

Applying this standard, the California Court of Appeal found that the instruction was not erroneous based on the following reasoning:

> Defendant's interpretation of CALJIC No. 8.45 is unreasonable. The instruction plainly states that "Every person who unlawfully kills a human being without malice aforethought ... is guilty of ... involuntary manslaughter." The later reference to "There is no malice aforethought if the killing occurred [during unreasonable self-defense]" by no means states or implies that "without malice aforethought" exists only if there is unreasonable self-defense. Such a construction would render meaningless the rest of the instruction, which informs that a killing is unlawful within the meaning of involuntary manslaughter if it results from an unlawful act dangerous to life or a lawful act committed without due caution. Considering the instruction as a whole, the reference to unreasonable self-defense can only be construed to refer to a form of involuntary manslaughter that is defined by the mental state of the actor rather than by the unlawful or lawful act of the actor. Defendant simply fails to demonstrate a reasonable likelihood that the jury misunderstood CALJIC No. 8.45.

(Resp't Ex. B-3 at 6-7.) As explained by the state appellate court, under California law, involuntary manslaughter occurs where the defendant has acted without malice aforethought.

10

(Id.) While CALJIC No. 8.45 stated that there is no malice aforethought if there is unreasonable self-defense, the instruction did not state that unreasonable self-defense is the only circumstance under which the jury could find no malice aforethought. Indeed, the instruction lists alternative scenarios under which, under state law, a defendant acts without malice aforethought, including if the killing results from an unlawful act dangerous to life, or if it results from a lawful act committed without due caution. Consequently, the state appellate court reasonably concluded that there is no reasonable likelihood that the jury would misinterpret the instruction to mean that it could only find involuntary manslaughter if it also found that Petitioner acted in unreasonable self-defense.

As the state court reasonably found that there was no reasonable likelihood that the jury applied the instruction incorrectly or in a manner that violated Petitioner's constitutional rights, the state courts' decisions denying Petitioner's claim were not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor were they based on an unreasonable determination of the facts in light of the evidence presented. See 28 U.S.C. § 2254(d)(1),(2).

**CONCLUSION**

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED. The Clerk of the Court shall enter judgment and close the file.

No certificate of appealability is warranted in this case. See Rule 11(a) of the Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (requiring district court to rule on certificate of appealability in same order that denies petition). Petitioner has failed to make a substantial showing that any of his claims amounted to a denial of his constitutional rights or demonstrate that a reasonable jurist would find this Court's denial of his claims debatable or wrong. See Slack v. McDaniel, 529 U.S. 473, 484 (2000).

IT IS SO ORDERED.

DATED: 9/1/10

                                               SAUNDRA BROWN ARMSTRONG
                                               United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

SUNNY,

        Plaintiff,

v.

NGUYEN-V-ROBERT A. HOREL et al,

        Defendant.

Case Number: CV08-03457 SBA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on September 2, 2010, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Sunny V. Nguyen F-51639
Pelican Bay State Prison
P.O. Box 7500
Crescent City, CA 95532

Dated: September 2, 2010

        Richard W. Wieking, Clerk
        By: LISA R CLARK, Deputy Clerk